## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NAIN ARDON, on Behalf of Himself and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>V.<br><br>THE UNITED STATES OF AMERICA,<br><br>  Defendant. | NO. CIV. A. 22-562 C |

### PLAINTIFF'S COLLECTIVE ACTION COMPLAINT

1. This lawsuit is brought by the Named Plaintiff Nain Ardon, on behalf of himself and all others similarly situated, ("Plaintiff") against the Defendant United States of America ("Defendant").

2. The Plaintiff and proposed Class Members are current and former employees of the United States Government employed at the U.S. Department of Justice, Bureau of Prisons. The Plaintiff and Class Members worked across the country and were systemically denied the pay that they were entitled under the Fair Labor Standards Act and the Federal Employees Pay Act. This case challenges Defendant's long standing policy of failing to properly compensate its non-exempt correctional officers for all hours that they work. Specifically, Defendant only paid the Plaintiff and the Class Members for the time they were scheduled to work instead of the time they *actually* performed work for Defendant. As a result, Plaintiff and the Class Members were not paid significant wages.

3. In particular, Plaintiff and the Class Members often worked in excess of eight hours in one day and 40 hours per week, however, they were not paid all earned overtime wages

1

as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiff bring this claim as a collective action pursuant section 216(b) of the FLSA.

## SUBJECT MATTER JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). *Abbey v U.S.*, 745 F.3d 1363, 1369 (Fed. Cir. 2014).

5. Venue is proper in this judicial district. *Id.*

## PARTIES AND PERSONAL JURISDICTION

6. Plaintiff Nain Ardon is an individual residing in San Bernardino, California. Plaintiff has worked for Defendant as a correctional officer at the Federal Correctional Institution in Victorville, California. Plaintiff has been employed by Defendant since 2009 as a "Mobil Patrol Officer." His written consent to this action is attached hereto as Exhibit "A."

7. The FLSA Class Members are all current and former correctional officers who worked in the position of "mobile patrol officer" for Defendant at any time during the three year period prior to the filing of this Complaint to the present.

## COVERAGE

8. At all material times, Defendant has been an employer within the meaning of 3(d) of the FLSA. 29 U.S.C. § 203(d).

9. As a public agency, Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1)(c).

10. At all material times, Plaintiff and the Class Members were/are employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 207.

11. At all material times, Plaintiff and the Class Members were not exempt from overtime under the FLSA.

**FACTS**

12.     The Plaintiff and Class Members are non-exempt correctional officers working as "mobile patrol officers" for the United States Bureau of Prisons.  At all times during their employment, they have been entitled to the rights and protections of the FLSA, including overtime pay. Unfortunately, Defendant has systematically violated the law by instituting a policy of only paying Plaintiff and the Class Members for their scheduled shift time while requiring the Plaintiff and Class Members to perform work both before the start of their scheduled shifts and after their scheduled shifts without pay.  This policy is illegal on its face.  Attached hereto as Exhibit "B" are examples of pay records showing Defendant's illegal pay policy.[1]  Again, Defendant does not pay for the actual time worked by the Plaintiff and Class Members.

**BACKGROUND REGARDING PRISON FACILITIES**

13.     The U.S. government operates prison facilities across the country.  These facilities house tens of thousands of criminals charged with or convicted of federal crimes, including violent crimes such as murder and rape.  To ensure the security of these prison facilities and to maintain the safety of these prison facilities, correctional officers are employed by the government.  These prison facilities, including the location where the Named Plaintiff worked, are staffed by correctional officers 24 hours per day and 365 days per week.  The correctional officers ensure the safety and security of the prison facilities.  The correctional officers are required to maintain constant vigilance and monitor the actions of others as soon as they arrive at the facility.  If anything transpires that could affect the safety and security of the facilities, the correctional

---

[1] The time paid for by Defendant does not include any 10 minute, 15 minute, 20 minute, or even 30 minute increments.  Instead, pay is precisely in one hour increments (and not one minute over).

3

officers have a duty to act and address those issues no matter the location and time of day that it occurs, including before their paid shifts begin and after they end.

14. Most of the posts at the prison facilities are staffed for either 16 hours or 24 hours per day, although some may be staffed for only 8 hours per day. When a post is a 16 or 24 hour post, Defendant assigns a correctional officer to the post for a scheduled 8 hour shift. As noted above, because the scheduled shift is for 8 hours, Defendant only pays for 8 hours even if the correctional officer performs work lasting longer than 8 hours.

15. For a 24 hour post, there are three 8 hour shifts. For the 16 hour post, there are two 8 hour shifts. Again, because each shift is a scheduled 8 hours, the correctional officers are only paid for 8 hours even if they work longer than 8 hours.

16. There is no schedule overlap for these 8 hour shifts. That is, as soon as one shift is scheduled to end, another shift is scheduled to begin. The shifts are normally the Day Shift of 8 am to 4 pm, the Evening Shift of 4 pm to 12 am, and the Morning Shift from 12 am to 8 am. The correctional officers, including the Plaintiff and Class Members, were required to be at their assigned posts, in unform, with all assigned equipment, and ready to work by the start of their shift. If they failed to do so and were late, they were subject to being disciplined.

17. The Plaintiff Ardon regularly worked the Day Shift of 8 am to 4 pm during his employment, although he also worked other times as well. He worked as a mobile patrol officer where he manned the complex patrol mobile post. He has worked for Defendant since March 2009. His normal schedule was Friday to Tuesday with Wednesdays and Thursdays as days off. He was normally scheduled to work 8 hours per day and 40 hours per week. However, when including the amount of time he spent working prior to the start of his scheduled shift and after the

end of his scheduled shift, Plaintiff regularly worked more than 40 hours each week and more than 8 hours each day.

### THE PLAINTIFF AND CLASS MEMBERS PERFORMED SIGNIFICANT PRE-SHIFT WORK THAT WENT UNCOMPENSATED

18.     Defendant has failed to pay, pursuant to a common policy of only paying for scheduled time rather than actual time worked, all overtime compensation due to the Plaintiff and Class Members for time that Defendant has suffered or permitted them to work in pre-shift activities which were required to be performed on the premises of Defendant.  The Plaintiff and Class Members were required to perform significant pre-shift work that was integral and indispensable to their daily duties for Defendant.

19.     The primary job duty of the Plaintiff and the Class Members was to patrol the outside of the prisons, ensure safety at the prisons, and to maintain security at the prisons.  As mobile patrol officers, the Plaintiff's and Class Members' post was outside the prison complex.  As part of their daily duties, the Plaintiff and Class Members were required to patrol the entire prison complex.  They patrolled outside of the prison complex to look for anything that could be deemed suspicious.  They responded to any disturbances and their ultimate responsibility was to ensure that the complex was safe.

20.     Additionally, as part of their daily duties, they monitored the vehicles parked at the prisons to make sure that they were not broken into, they directed people who arrived at the prisons regarding where to go, and directed ambulances and other emergency vehicles.

21.     While working for Defendant, the Plaintiff and Class Members were armed with a 9 mm handgun, an M4 rifle, and a shotgun.  They patrolled the prison complex in a government provided truck.

22. Plaintiff and the Class Members were required to arrive at work 30 minutes to 1 hour prior to the start of their scheduled shifts to perform required pre-shift work. Plaintiff normally arrived at work at 7 am to 7:30 am even though he was not paid until 8 am.

23. The pre-shift work that the Plaintiff and Class Members were required to perform included a (1) vehicle inspection, (2) pre-shift briefing, and (3) equipment exchange and inspection.

24. When a mobile patrol officer arrives at the prison complex to begin his shift, he/she is required to make contact with the outgoing mobile patrol officer. At that time, the incoming mobile patrol officer performs an inspection on the vehicle that was previously used by the outgoing mobile patrol officer. There is a checklist with a list of items on the vehicle that are to be inspected. These items include the tires, fluid, lights, radio, siren, heater, air conditioner, and the outside of the vehicle to determine if any damage exists. The time it takes to perform the vehicle inspection is approximately 10-20 minutes.

25. The vehicles are needed for the Plaintiff and Class Members to perform their patrol duties outside the prison complex and the vehicle inspections were required by Defendant. Plaintiff and Class Members were told in advance the time they were required to be at the prison centers and were required to arrive well before the start of their shifts to complete all necessary pre-shift work, including the vehicle inspections.

26. The vehicle inspections were also necessary to the principal work performed by the Plaintiff and Class Members – to provide security in the prisons and to patrol the outside of the prison complexes. The vehicle inspections were also undertaken on Defendant's premises, were controlled and required by Defendant, and undertaken primarily for the benefit of Defendant.

27. Indeed, Defendant required the Plaintiff and Class Members to undergo the vehicle inspections for the purposes of overall safety in the prison and to ensure that the mobile patrol officers were able to patrol and timely respond to any disturbances or suspicious activity.

28. These vehicle inspections ensured that the trucks provided to the Plaintiff and Class Members were in good working order, were safe, and had the necessary parts so that the Plaintiff and Class Members could conduct their patrols. Thus, the vehicle inspections and the work of the mobile patrol officers shared the same purpose. In fact, the vehicle inspections were tied to the productive work of providing security by the mobile patrol officers. The vehicle inspections were necessary to keep the prisons safe.

29. Defendant could not have eliminated the vehicle inspections without impairing the mobile patrol officers' ability to perform their work. If Defendant eliminated the vehicle inspections, the mobile patrol officers could inadvertently drive vehicles during their patrols that were needed maintenance, repairs, or parts to operate. In that event, the vehicles would not work as intended. Without the vehicles, the Plaintiff and Class Members could not patrol the prisons and this would most certainly result in a less secure prison and would impair the mobile patrol officers' ability to provide security, monitor for suspicious activity, and maintain safety. Additionally, without vehicles in good working order, the mobile patrol officers' ability to maintain a secure prison environment would be compromised.

30. As noted above, Defendant did not pay for the time spent by Plaintiff and the Class Members for conducting the vehicle inspections.

## PRE-SHIFT BRIEFING AND COMMUNICATION WITH OUTGOING CORRECTIONAL OFFICERS

31. The Plaintiff and Class Members were also required by their supervisors to attend a pre-shift briefing with the correctional officers they were relieving. During this time, the Plaintiff

and Class Members discussed what occurred during the prior shift and the current proceedings at the facility. For example, the briefing addresses whether any disturbances occurred, suspicious activity transpired, or whether there are any individuals in the facility that should not remain at the facility. They also discussed any other security incidents, such as any vehicles arriving at the prison complex that should be there. While the incoming and outgoing officers communicated with each other, only one officer was paid at a given time because there was not any overlap allocated for this in the schedules for the officers. Thus, because Defendant only paid for scheduled time, which did not account for two officers being at the post at the same time, Defendant did not pay for all time that was worked by the Plaintiff and Class Members.

32. The time it takes to walk to conduct the pre-shift briefing was approximately 10-20 minutes. This time constitutes compensable work time because it was necessary to the principal work performed by the Plaintiff and Class Members – to provide security in the prisons and to search for suspicious activity. As noted above, these activities were undertaken on Defendant's premises, were controlled and required by Defendant, and undertaken primarily for the benefit of Defendant.

33. These activities were necessary to ensure the overall safety in the prison, which was the primary job function performed by the Plaintiff and Class Members. These activities were necessary to perform the productive work of providing security in the prisons, identify any suspicious behavior, and to patrol the outside of the prison complexes.

34. Defendant could not have eliminated these activities without impairing the Plaintiff's and Class Members' ability to complete their work. If Defendant eliminated these activities, the Plaintiff and Class Members could not effectively perform their job in maintaining a secure prison environment.

35. Defendant did not pay the Plaintiff and Class Members for this time spent working.

36. However, this time should have been compensated by Defendant.

## PRE-SHIFT EQUIPMENT GATHERING

37. The Plaintiff and Class Members are then required to collect and inspect the equipment to perform their work for Defendant. The equipment includes the 9mm handgun, pepper spray, handcuffs, radio, shotgun, M4 rifle, flashlight, helmet, bulletproof vest, bullets, shotgun shells, and magazines for the M4 rifle. The outgoing officer unloads the 9mm handgun and gives it to the incoming officer. The incoming officer then inspects the weapon and counts the number of bullets for the weapon. If any bullets are missing, the incoming officer is required to report the missing bullet to his/her supervisor. Each bullet and weapon must be accounted for on every shift.

38. After handing the incoming officer the 9mm handgun and bullets, the outgoing officer provides the handcuffs, pepper spray, and radio. The incoming officer must test the radio to make sure that it works. The incoming officer must also inspect the shotgun and M4 rifle and ensure that there are the correct number of hollow point bullets in each magazine, count the number of magazines, count the number of shotgun shells, and make sure that there are a certain number of shotgun shells in the barrel of the weapon. The incoming officer must then inspect the bulletproof vest, helmet, and flashlight. The incoming officer must also make sure that the vehicle he is receiving has the required keys. Each mobile patrol officer must have keys for different locations at the prisons and those keys must be maintained and secured. The time it takes to perform this pre-shift equipment exchange and inspection is 10-20 minutes.

39. This equipment is necessary for the Plaintiff and Class Members to perform their work in ensuring safety and security at the prisons. Gathering and inspecting this equipment must

be performed on the premises of Defendant because the Plaintiff and Class Members cannot bring this equipment to the facility and must use the government provided weapons and equipment. This equipment is to remain on the premises of Defendant. This equipment is needed to ensure that the safety and security of the prisons is properly maintained.

40. Gathering and inspecting the equipment was necessary to the principal work performed by the Plaintiff and Class Members – to provide security in the prisons, search for suspicious activity, and maintain safety. As noted above, gathering and inspecting the equipment was undertaken on Defendant's premises, was controlled and required by Defendant, and undertaken primarily for the benefit of Defendant.

41. These activities were necessary to ensure the overall safety and security in the prison, which was the primary job function performed by the Plaintiff and Class Members. These activities were necessary to perform the productive work of patrolling and providing security at the prisons.

42. Defendant could not have eliminated this equipment without impairing the Plaintiff's and Class Members' ability to perform their work. If Defendant eliminated this equipment, the Plaintiff and Class Members could not effectively perform their job in maintaining a secure prison environment. For example, if a violent act occurred at the prison, a correctional officer could not respond or address the situation without the weapons, pepper spray or handcuffs.

43. Defendant did not pay the Plaintiff and Class Members for this time spent working.

44. However, this time should have been compensated by Defendant.

## **CONTINUOUS WORKDAY RULE**

45. Pursuant to the continuous workday rule, once the first compensable activity is performed, the continuous workday has started and all subsequent activities performed are

compensable regardless of the amount of time each specific individual activity takes. *See* 29 C.F.R. § 790.6(a). The continuous workday rule requires compensation from the start of the first compensable activity to the last compensable activity. *See id.* Specifically, section 790.6(a) states as follows:

> Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.

*Id.*

46. Thus, pursuant to the continuous workday rule, the Plaintiff and Class Members are entitled to compensation from the time they first performed their principal activities. Defendant failed to do so.

## POST SHIFT WORK

47. Defendant has also deprived the Plaintiff and Class Members of overtime compensation by failing to compensate them for the time that Defendant suffered or permitted to them to engage in post-shift activities, each of which was required to be performed on the premises of Defendant. Indeed, after the Plaintiff's and Class Members' scheduled shifts were over, they were still required to perform significant post-shift work that went uncompensated. At the end of their scheduled shifts, they were required to communicate with the incoming officer who was relieving them for the briefing. During this briefing, the incoming and outgoing officer discussed what transpired during the prior shift. They discussed any problems, whether any suspicious activity had occurred, and other events during the prior shifts.

48. Additionally, the outgoing officer was required to provide his equipment to the incoming officer. The outgoing officer removed the bullets from the 9mm handgun and provided the bullets and handgun to the incoming officer to be inspected and counted. The outgoing officer

also removed from his duty belt the radio, handcuffs, pepper spray, and keys and provided that equipment to the incoming officer. The outgoing officer also assisted the incoming officer with inspecting the remaining weapons and equipment.

49. The outgoing officer then was required to walk from his post to the exit of the prisons. This time is compensable because the Plaintiff and Class Members were required to remain vigilant at all times, observe and correct inmate behavior, respond to any security breaches, and identify any safety issues. If an alarm sounded while the Plaintiff and Class Members were walking, they were required to immediately respond to the emergency. Thus, this time is predominately for the benefit of Defendant.

50. The post shift work normally lasted 10-20 minutes. Again, the Plaintiff and Class Members were not paid for this post shift work because they were only paid for the time when their shifts were scheduled to begin and end.

51. The post shift work was compensable because the tasks were required by Defendant, performed on the premises of Defendant, and necessary for the Plaintiff and Class Members to perform their work for Defendant. Indeed, the post shift work identified above was necessary to the principal work performed by the Plaintiff and Class Members – to provide security in the prisons, to maintain the safety of the prisons, and to search for any suspicious activity. The post shift work was also controlled and required by Defendant and undertaken primarily for the benefit of Defendant.

52. The post shift work was also necessary to keep the prisons safe and secure – a primary duty of the Plaintiff and Class Members. In fact, the post shift work was directly tied to the productive work of providing security, patrolling, and ensuring the safety of the prisons by the Plaintiff and Class Members.

53. Defendant could not have eliminated the post shift work altogether without impairing the Plaintiff's and Class Members' ability to complete their work. Eliminating the post shift work, would most certainly result in a less secure and safe prison and would impair the Plaintiff's and Class Members' ability to provide security, ensure safety, and patrol the prison complex.

## **COMPENSATION OWED TO THE PLAINTIFF AND CLASS MEMBERS**

54. Given the activities identified above, the Plaintiff and Class Members were denied significant unpaid wages.

55. The Plaintiff and the Class Members were non-exempt employees.

56. The Plaintiff and the Class Members were paid on an hourly rate basis.

57. When they worked more than forty hours in a workweek or 8 hours in a day, they were entitled to overtime pay.

58. Indeed, the Plaintiff and Class Members regularly performed more than 8 hours of work each day because they were required by Defendant to perform work before the start of their scheduled shifts and after the end of their scheduled shifts.

59. The pre-shift activities identified above were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity and was compensable.

60. The post shift activities identified above were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity and was compensable.

61. Defendant's policy of only paying for the time the Plaintiff and Class Members were scheduled to work instead of the time that they *actually* worked has caused significant harm to the Plaintiff and Class Members.

62. Due to the substantial pre-shift and post shift work, the Plaintiff and Class Members were not paid for all time worked each day and as a result, they are owed significant overtime wages.

63. Indeed, Defendant has been repeatedly found liable for the conduct described in this Complaint.

## **COUNT ONE: FAILURE TO PAY OVERTIME WAGES**
**(On Behalf of Plaintiff and the FLSA Class Members)**

64. Plaintiff incorporate all allegations contained in the foregoing paragraphs.

65. Section 7(a) of the FLSA, 29 U.S.C. § 207(a)) provides that an employer shall pay its employees at a rate no less than time-and-a-half for all hours worked more than forty (40) hours per workweek.

66. Additionally, section 551.501 of the Code of Federal Regulations, 5 C.F.R. § 551.501, provides that federal agency employers shall compensate their employees at a rate of no less than time-and-a-half for all hours worked more than eight hours per day and/or 40 hours per workweek.

67. The Plaintiff and Class Members are employees entitled to overtime wages.

68. None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are paid are applicable to Defendant, Plaintiff, or the Class Members.

69. Pursuant to 29 U.S.C. § 216(b), the Plaintiff and Class Members are entitled to recover their unpaid overtime wages and liquidated damages in an amount equal to their unpaid wages.

70. Further, pursuant to the Back Pay Act, 5 U.S.C. § 5596, the Plaintiff and Class Members are entitled to recover interest on the back wages owed to them due to Defendant's failure to pay overtime wages.

71. The Plaintiff and Class Members are also entitled to recover their attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and the Back Pay Act, 5 U.S.C. § 5596.

## COLLECTIVE ACTION ALLEGATIONS

72. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

73. Plaintiff has actual knowledge that the FLSA Class Members have also been denied overtime pay for hours worked over 8 hours per day and/or forty (40) hours in a workweek because of Defendant's policy of only paying for *scheduled* hours worked and not *actual* hours worked.

74. Plaintiff's knowledge is based on their personal work experience and through communications with other workers.

75. Other workers similarly situated to Plaintiff throughout the United States were also not paid full overtime wages due to Defendant's illegal policy.

76. Although Defendant permitted and/or required the FLSA Class Members to work more than 8 hours per day and 40 hours per week, Defendant denied them full compensation for their overtime hours.

77. The FLSA Class Members are not exempt from receiving overtime pay.

78. The FLSA Class Members are similar to the Plaintiff in terms of relevant job duties, pay structure, work conditions, and the denial of overtime pay.

79. Defendant's failure to pay overtime compensation at the rates required by the FLSA and section 551.501 results from generally applicable policies or practices and does not depend on the personal circumstances of any potential Plaintiff.

80. The experiences of the Plaintiff, with respect to their pay, hours, and duties are typical of the experiences of the FLSA Class Members.

81. The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

82. Although the exact amount of damages may vary among the FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all FLSA Class Members.

83. As such, the class of similarly situated Plaintiff for the FLSA Class is properly defined as follows:

> **All current and former correctional officers who worked in the position of "mobile patrol officer" for Defendant at any time during the three year period prior to the filing of this Complaint to the present.**

## PRAYER

84. For these reasons, Plaintiff pray for:

   a. Any order declaring that Defendant's failure to pay the Plaintiff and the Class Members for their pre-shift and post-shift work violated federal law;

   b. An order certifying this case as a collective action under the FLSA;

   c. A judgment against Defendant awarding Plaintiff and the Class Members all their unpaid wages, overtime compensation, and liquidated damages;

   d. An order awarding attorneys' fees, costs, and expenses;

   e. Pre- and post-judgment interest at the highest applicable rates; and

    f.   Such other and further relief as may be necessary and appropriate.

                                  Respectfully submitted,

                              By:  /s/ Don J. Foty
                                  Don J. Foty
                                  Hodges & Foty, LLP
                                  dfoty@hftrialfirm.com
                                  Texas Bar No. 24050022
                                  4409 Montrose Blvd., Suite 200
                                  Houston, TX 77006
                                  Telephone: (713) 523-0001
                                  Facsimile: (713) 523-1116

                                  And

                                  David W. Hodges
                                  Hodges & Foty, LLP
                                  dhodges@hftrialfirm.com
                                  Texas Bar No. 00796765
                                  4409 Montrose Blvd., Suite 200
                                  Houston, TX 77006
                                  Telephone: (713) 523-0001
                                  Facsimile: (713) 523-1116

                                  ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS

## CONSENT TO PURSUE WAGE CLAIM AND BE REPRESENTED BY HODGES & FOTY, LLP

- I, __Nain Ardon_____ (print name), consent and agree to pursue my claims for unpaid wages through a lawsuit brought under the Fair Labor Standards Act and any state wage and hour law.

- I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if I am selected by counsel.

- I authorize the named Plaintiff and Hodges & Foty, LLP to file and prosecute my claim for unpaid wages on my behalf, and designate the named Plaintiff and Hodges & Foty, LLP to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims, entering into an agreement with the lawyers in this case, and I understand I will be bound be such decisions.

- I agree to be represented by Hodges & Foty LLP.

- If my consent form is stricken or if I am for any reason not allowed to participate in this case, I authorize Plaintiff's counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.

Date __2/8/2022_____     Signature __*Nain Ardon*__ (DocuSigned by: FD308A272540459...) _____

**EXHIBIT A**